MARY BORIS, PERSONAL REPRESENTATIVE OF THE ESTATE OF GLADYS L. SMITH, DECEASED, APPELLEE, V. GLEN ALLEN HEYD AND ROBIN LEA HEYD, APPELLANTS.

371 N.W.2d 268

Filed August 2, 1985.   No. 84-253.

Michael Lehan, for appellants.

Donald W. Kleine, for appellee.

KRIVOSHA, C.J., CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

GRANT, J.

This proceeding began as a strict foreclosure action on a land contract brought by plaintiff-appellee, Mary Boris, the personal representative of the estate of Gladys L. Smith (referred to as plaintiff), against defendants-appellants, Glen and Robin Heyd, husband and wife. The Heyds answered, generally denying the allegations of the petition and specifically denying that any moneys were due plaintiff under the contract. The Heyds also counterclaimed, seeking damages for fraud, including seeking the return of all moneys paid under the contract, and "for such other relief as the Court deems just and equitable." Plaintiff generally denied the allegations of the counterclaim. The district court dismissed the foreclosure action, ordered the contract rescinded, and awarded the Heyds damages. The Heyds appeal from the district court's order, alleging as error the court's failure to award damages for their "loss of bargain," failure to award them adequate damages for repairs and improvements to the real estate, and granting plaintiff a setoff for rent of the premises during the time the Heyds occupied the premises. There was no cross-appeal. We affirm as modified.

On June 21, 1978, Gladys Smith and the Heyds entered into a purchase agreement for Smith's home and lot at 5939 South 46th Street in Omaha, Nebraska. On August 9, 1978, a land contract was signed. The contract called for $6,000 downpayment and monthly installments of $179.95. The downpayment was made by Heyds, and monthly payments of $180 were made up to December of 1982.

In the spring of 1982 the Heyds learned that Smith could not

convey clear, marketable title due to the fact that the house was sitting on unimproved 46th Street, on property owned by the city. After unsuccessfully attempting to correct the title problems, the Heyds discontinued making monthly payments on December 1, 1982. Gladys Smith died on December 15, 1982, and her duly appointed personal representative filed this action for strict foreclosure on April 4, 1983.

During the period the Heyds lived at the residence, they paid $1,950 in taxes, and Glen Heyd testified that approximately $4,500 was spent in repairs to the premises. No setoff for reasonable rental value was pled or proved by the plaintiff.

After a trial to the court, the court dismissed the foreclosure action filed by plaintiff and rescinded the land contract between the parties. The premises were ordered returned to plaintiff, and plaintiff was ordered to pay the following amount to the Heyds: "(a) $6,000.00 (the return of the down payment plus interest from August 9, 1978); (b) $1,350.00 (the taxes paid by the defendants on the property); (c) $1,875.00 (the value of the improvements on the land)." The court also found and ordered:

> The Court finds that the $9,000.00 paid by the defendants [the Heyds] to the plaintiff is to be considered as the reasonable rental value of the property through November, 1982, (50 payments); and from December, 1982 to January, 1983 the rental value is found to be $2,520.00 and that amount is ordered as a set-off to the plaintiff's above recovery.

The trial court found that, by filing their counterclaim, the Heyds "clearly have elected to rescind the contract." This finding is consistent with the allegations of the counterclaim. All parties have treated the contract as rescinded, and no appeal is taken from that finding. Our review will be on that basis.

This action was commenced as a foreclosure proceeding. "A real estate foreclosure action is an action in equity triable on appeal de novo." *Travelers Indemnity Co. v. Heim*, 218 Neb. 326, 328, 352 N.W.2d 921, 923 (1984). Rescission, the relief granted on the counterclaim, is also equitable in nature and triable de novo in this court. *Caruso v. Moy*, 164 Neb. 68, 81 N.W.2d 826 (1957). Our review in this case is therefore de novo on the record. See Neb. Rev. Stat. § 25-1925 (Reissue 1979).

We first note that the trial court found, and the uncontroverted evidence shows, that the Heyds paid $650 in taxes on the property in each of 3 years. The trial court's order awarded the Heyds $1,350. The award appears to be a typographical error and should read $1,950. We modify that award accordingly.

The Heyds first assign as error the trial court's failure to grant the Heyds damages for their "loss of bargain," that is, the alleged increase in the value of the property during the time the parties treated the contract as valid and binding. This assignment of error is without merit for the reason that the remedies of rescission and damages are inconsistent, since the former is based upon disaffirmance and the latter on affirmance of the contract. *Russo v. Williams*, 160 Neb. 564, 71 N.W.2d 131 (1955). See, also, *Bryant Heating v. United States Nat. Bank*, 216 Neb. 107, 342 N.W.2d 191 (1983). As stated in *James v. Hogan*, 154 Neb. 306, 313, 47 N.W.2d 847, 852 (1951), "A party who rescinds can generally recover nothing beyond restitution. He was not entitled to recover any profit of his bargain . . . ."

The Heyds next assign as error the trial court's determination of damages with respect to the value of improvements made to the property. These alleged "improvements" were generally testified to by Glen Heyd as "repairs." The Heyds' contention is that the cost of improvements made totaled $4,649, but that amount is not specifically proved in the evidence. The district court determined that the Heyds were entitled to $1,875. The evidence supports the trial court's determination, and we agree with that finding.

Finally, Heyds argue that the trial court should not have allowed the $9,000 paid over 50 months by Heyds to be treated as rent and retained by appellee as such rent. We agree.

Heyds argue that the issue of rent due appellee was never raised by appellee in any form in the pleadings or during the trial. The fact question as to what would be the reasonable rental value of the property was neither pled nor proved. Since no evidence as to fair rental value appears in the record at any point, a setoff for fair rental value could be based only on conjecture or speculation. "Conjecture, speculation, or choice

of quantitative possibilities are, of course, not proof. There must be something more which would lead a reasonable mind to one conclusion rather than to the other." *Mustion v. Ealy*, 201 Neb. 139, 145, 266 N.W.2d 730, 734 (1978). Furthermore, plaintiff was required by Neb. Rev. Stat. §§ 25-811 and 25-812 (Reissue 1979) to plead the setoff in her response to the Heyds' counterclaim. No such pleading was filed. The setoff of $9,000, representing the 50 monthly installments of $180, plus the $2,520 allowance for future rents must be disallowed. The judgment is modified accordingly. In all other respects the judgment is affirmed.

AFFIRMED AS MODIFIED.